STATE of Oklahoma ex'rel. Glenn A. YOUNG, Petitioner,

v.

Honorable Charles S. WOODSON, Judge of the District Court of Creek County, Respondent.

No. 46564.

Supreme Court of Oklahoma.

April 23, 1974.

Rehearing Denied June 4, 1974.

L. G. Hawkins, Hawkins & Byers, Sapulpa, for petitioner.

Larry Derryberry, Atty. Gen., by Robert H. Mitchell, Asst. Atty. Gen., Oklahoma City, for respondent.

### ORDER

The opinion promulgated herein on December 11, 1973, and the correction order entered herein March 18, 1974, are hereby ordered withdrawn, and

Substitute opinion adopted and promulgated in lieu hereof.

Done in conference this 22nd day of April, 1974.

s/ Denver N. Davison
Chief Justice

SIMMS, Justice:

Petitioner requests this Court to prohibit the Respondent District Judge of Creek County from enforcing a judgment of guilt of Direct Criminal Contempt against him. Petitioner further seeks mandamus to compel the Judge to disqualify and to let another District Judge conduct a hearing on the question of whether the judgment of contempt should be vacated.

The contempt citation was issued as a result of the following colloquy between the Respondent Judge and Petitioner Attorney:

"THE COURT: I am going to hear everything in this matter today, Mr. Young.

MR. YOUNG: Well, you do what you want to do, because I am asserting our right to go to the Supreme Court of Oklahoma, and I have practiced law for thirty years and never heard of a Judge take this position.

Now I am now giving you notice I am going to the Supreme Court and you will put it off until the Supreme Court acts, because they are controlling over you and that is what I am going to do.

THE COURT: The Supreme Court is, Mr. Young, and you are not, and I want to warn you in court right now, you are almost in contempt of this Court.

MR. YOUNG: Well—

THE COURT: And one more outburst by you and you are going to be found in contempt; do you understand that?

MR. YOUNG: Well, I am going to make a record and—

THE COURT: All right. You make your record.

MR. YOUNG: All right, that is my record.

THE COURT: I want you to answer my question. Do you understand what the Court has told you?

MR. YOUNG: I want my right to go to the Supreme Court.

THE COURT: You answer the Court yes or no, Mr. Young.

MR. YOUNG: I don't even know what your question is, because I think I have got a right to go to the Supreme Court.

THE COURT: I have told you that the Court feels that you are very close to being in contempt of this Court and I have told you that one more outburst in this court and the Court will find you in contempt. Now do you understand what the Court has said?

MR. YOUNG: Well, I want my—

THE COURT: You may answer the question yes or no.

MR. YOUNG: Well, I don't think I have any obligation to answer any question yes or no, and I do say I have a right to go to the Supreme Court. I am a lawyer and a member of the bar and—

THE COURT: Are you refusing to answer this Court's question?

MR. YOUNG: I am refusing to answer yes or not to a question which I say is just a question of whether I have a right as a lawyer to go to the Supreme Court.

THE COURT: All right. At this time, the Court finds that you are in contempt of this Court for willfully refusing to answer the questions of this Court.

MR. YOUNG: Okay. I am going to prepare a writ of habeas corpus for the Supreme Court with this and we will let them take the whole thing.

THE COURT: All right. At this time, the Court is going to sentence you on its contempt finding by this Court and I am going to sentence you to jail for twenty-four hours. There is a deputy sheriff here in this courtroom right now.

MR. YOUNG: All right. I want to post bond and appeal to the Supreme Court.

THE COURT: All right, you may post bond.

MR. YOUNG: All right. Set the bond.

THE COURT: I will set the bond at a hundred dollars.

MR. YOUNG: And we will go to the Supreme Court on the whole matter, and I would like to have a transcript of this record.

THE COURT: You are entitled to it. The bond is set at a hundred dollars. Post the bond before you leave, or the sheriff is going to take you to jail right now.

MR. YOUNG: Okay.

(Thereupon, the cause in hearing was concluded.)"

The Oklahoma Constitution, Article 2, § 25, provides in part:

"In no case shall a penalty or punishment be imposed for contempt, until an opportunity to be heard is given."

We note that Article 2, § 25 offers greater protection and relief from the oppressive use of the power of contempt than is apparently guaranteed by the United States Constitution, for it assures a contemner of "an opportunity to be heard" before penalty or punishment is imposed. Young v. State, Okl.Cr., 275 P.2d 358 (1954).

■ Sacher v. United States, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717, sustained the power of the federal court to *summarily* punish a direct criminal contempt. The term "summary" is defined in the body of *Sacher, supra,* as being a procedure which dispenses with the formality of delay and digression that would result from the issuance or process, and among other things, the holding of a hearing. We are of the

opinion that a clear reading of Art. 2, § 25 of the Oklahoma Constitution prohibits the "summary" imposition of a sentence for direct criminal contempt, even though the Supreme Court of the United States, under Federal standards, held that such a hearing was unnecessary.

We do not indicate, however, that where the alleged contempt be INDIRECT, as opposed to DIRECT, that under Federal standards the alleged contemner is not entitled to a hearing under the Federal Sixth Amendment guaranties. In Holt v. Commonwealth of Virginia, 381 U.S. 131, 85 S.Ct. 1375, 14 L.Ed.2d 290, a case involving an indirect contempt, the Supreme Court of the United States held that the alleged contemner was entitled to his Sixth Amendment opportunity to be heard in his defense before imposition of sentence for contempt.

Nothing herein *contained is to be construed as infringing* upon the power of an Oklahoma trial judge to properly maintain order and decorum during the course of any proceeding. Nor should this opinion be construed as infringing upon the right of a trial judge to enter a finding of contempt. We simply hold, that under the prohibitions of the Oklahoma Constitution, a trial judge may not "summarily" impose a sentence for contempt, direct or indirect, without giving the alleged contemner an opportunity to be heard.

■ In the instant case Petitioner was warned that he was in danger of being held in contempt of court. When the Petitioner persisted in asserting his position and refused to directly answer a "yes" or "no" question put to him by the Judge, he was summarily adjudged to be in contempt of court and a sentence of twenty-four hours in jail was imposed. The execution of the sentence was stayed by Petitioner's request and the Judge's order that he be allowed to post bond.

Prior to the imposition of sentence, there was no opportunity for Petitioner to be heard as is clearly required by Art. 2, § 25. In Ex parte Reily, 60 Okl.Cr. 217, 62 P.2d 1035 (1936), the Court of Criminal Ap-

peals considered a case where an attorney was summarily held in contempt for repeatedly making prejudicial statements to a jury in disregard of the court's ruling. The Court held that the right to be heard is constitutional and that the denial of the right goes to the jurisdiction to assess punishment:

> "When this right is denied, the court has no jurisdiction to enter judgment, and if he attempts to do so, his act is void and the person imprisoned under such judgment may have his conviction inquired into in a habeas corpus proceeding. * * *"

Likewise, Sullivan v. State, Okl.Cr., 419 P.2d 559 (1966) involved a summary proceeding in which the defendant was held in direct contempt of court. On appeal, it was held that a petitioner who was not given an opportunity for a hearing for contempt was denied due process of law under Art. 2, § 7, Oklahoma Constitution. The Court cited Ex parte Dawes, 31 Okl. Cr. 397, 239 P. 689, stating:

> "Under the clause of section 25 of the Bill of Rights providing, 'In no case shall a penalty or punishment be imposed for contempt, until an opportunity to be heard is given,' an opportunity to be heard before a penalty or punishment is imposed for contempt is an *indispensable essential* to the administration of due process of law as contemplated by the constitutional inhibition that 'no person shall be deprived of life, liberty or property, without due process of law.' Sec. 7, Bill of Rights." (emphasis supplied) 419 P.2d, at 562.

Concluding that the sentence for contempt imposed upon Petitioner did not meet Oklahoma Constitutional standards, we next turn to the issue of disqualification of the respondent judge who imposed the sentence for contempt.

In Mayberry v. Pennsylvania, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971), the Supreme Court of the United States held that due process requires that a defendant in a criminal contempt proceeding should be given a trial before a judge oth-

er than the judge who was the subject of the contempt, if the contemptuous conduct or words were likely to inflame the judge, or likely to cause him to "respond to a personal grievance." In *Mayberry*, the defendant called the judge, among other things, "a dirty tyrranical old dog", "stumbling dog", "fool", and the defendant also told the judge that the judge was running a "Spanish Inquisition". The defendant also told the judge to "Go to Hell", and "Keep your mouth shut."

The Supreme Court stated that "insults of that kind are apt to strike at the most vulnerable and human qualities of a judge's temperment." The Supreme Court, however, held that it was not every attack on a judge which disqualified him from presiding over direct contempt proceedings.

Cannon v. State, 58 Okl.Cr. 451, 55 P.2d 135 (1936) involved, inter alia, disqualification of a judge from hearing a contempt citation where the defendant had stated in an affidavit to the judge that he believed an opposing attorney in a civil action was the judge's "advisor and dictator". The Court held:

> "Public confidence in our judicial system and courts of justice demands that causes be tried by unprejudiced and unbiased judges, and a denial of a change of judge, applied for on the ground of prejudice, will be presumed to be a denial of justice."

██ Without passing upon the allegation of bias or prejudice of respondent judge, we simply note that the trial judge was so integrated with the alleged contempt that we believe the ends of justice will be better served if the matter were assigned to another judge for hearing on petitioner's motion to vacate the adjudication of contempt, and, if the petitioner is adjudged guilty of contempt, for a hearing, in accordance with Art. 2, § 25, prior to the imposition of sentence.

██ In addition, we find that throughout the proceedings, petitioner repeatedly insisted he had a right to stay proceedings during trial simply by giving notice of his

intent to present application for extraordinary relief to the Supreme Court of Oklahoma upon any ruling of the trial judge, not only as to contempt proceedings, but to any other order or finding of the trial judge. This position is without merit. Not only is the granting of extraordinary relief not a matter of right (See: Rule 37, 12 O.S.1971, Ch. 15, App. 1) but our attention is neither directed to nor do we find authority or any reason for allowing the interruption of judicial proceedings by such a novel procedure. Determination of the propriety or the conduct of the trial judge or the parties and their attorneys should not be permitted to delay disposition of the cause on its merits unless necessary to make disposition possible. We therefore hold that one adjudged in direct contempt may not stay judicial proceedings by an original application to this Court for extraordinary relief in contempt matters, nor may he follow the same procedures concerning any other order of the trial judge made during trial.

■ The American Bar Association Project on Standards of Criminal Justice has promulgated Standards relating to the function of the trial judge with respect to the use of the contempt power. ABA Standards Relating to the Function of the Trial Judge, Approved Draft, 1972. These standards take into consideration the limitations mentioned above, and with slight adaption to reconcile them with Oklahoma's sui generis characterization of the contempt power, can be adopted by this Court to serve as procedural guidelines for trial judges in this jurisdiction in the exercise of contempt power. Prospectively, the trial judges of this State should be guided by the following Standards in direct contempt situations; and said Standards are hereby declared to be Court Rules of procedure in the trial courts of Oklahoma subject to revision and change as any other rules of this Court.

1. INHERENT POWER OF THE COURT.

The court has the inherent power to punish any contempt in order to protect the rights of the parties and the interests of the public by assuring that the administration of justice shall not be thwarted. The trial judge has the power to cite and if necessary punish summarily anyone who, in his presence in open court, willfully obstructs the courts of judicial proceedings after an opportunity to be heard has been afforded.

2. ADMONITION AND WARNING.

No sanction other than censure should be imposed by the trial judge unless (i) it is clear from the identity of the offender and the character of his acts that disruptive conduct was willfully contemptuous, or (ii) the conduct warranting the sanction was preceded by a clear warning that the conduct is impermissible and that specified sanctions may be imposed for its repetition.

3. NOTICE OF INTENT TO USE CONTEMPT POWER; POSTPONEMENT OF ADJUDICATION.

(a) The trial judge should, as soon as practicable after he is satisfied that courtroom misconduct requires contempt proceedings, inform the alleged offender of his intention to institute such proceedings.

(b) The trial judge should consider the advisability of deferring adjudication of contempt for courtroom misconduct of a defendant, an attorney or a witness until after the trial, and should defer such a proceeding unless prompt punishment is imperative.

4. NOTICE OF CHARGES AND OPPORTUNITY TO BE HEARD.

Before imposing any punishment for contempt, the judge should give the offender notice of the charges and at least a summary opportunity to adduce evidence or argument relevant to guilt or punishment.

5. REFERRAL TO ANOTHER JUDGE.

The judge before whom courtroom misconduct occurs may impose appropriate sanctions, including punishment for con-

tempt, but should refer the matter to another judge, if his conduct was so integrated with the contempt that he contributed to it or was otherwise involved, or his objectivity can reasonably be questioned.

We hold that the trial judges of this State should apply the foregoing Standards in the exercise of contempt power in the future.

By reason of the foregoing, we conclude that the sentence for direct contempt was unconstitutionally imposed and the writ of prohibition will issue against the enforcement of that sentence, and the same should be vacated. The motion of petitioner to have the matter transferred to a different district judge for hearing will be sustained.

Original jurisdiction assumed. Writ of prohibition issue. Sentence for contempt vacated. Cause remanded with directions to transfer case to a different district judge.

DAVISON, C. J., WILLIAMS, V. C. J., and IRWIN, BERRY, HODGES, LAVENDER, and DOOLIN, JJ., concur.