Teresa SUTER, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. M-77-578.

Court of Criminal Appeals of Oklahoma.

Dec. 18, 1978.

Mac R. Oyler, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Julia T. Brown, Asst. Atty. Gen., for appellee.

## OPINION

CORNISH, Judge:

Teresa Suter has appealed to this Court from an order of the District Court, Oklahoma County, adjudging her to be in contempt. In her appeal she argues, among other things, that she was denied due process of law through the refusal of the judge to allow her to call witnesses on her behalf or to allow her attorney to make a closing argument. After reviewing the record of the proceedings, we are of the opinion that this case must be remanded for a new hearing.

I

 Article II, § 25, of the Oklahoma Constitution provides that no punishment for contempt may be imposed until the alleged contemner has been given an "opportunity to be heard." In *Nuckols v. Van Wagner,* Okl.Cr., 511 P.2d 1110 (1973), we

held that an "opportunity to be heard" included the right to be advised of the charge; the right to a reasonable opportunity to meet the charge by way of defense or explanation; the right to be represented by counsel; and the right to testify and call witnesses by way of defense or explanation.

Subsequently, the United States Supreme Court, in *Herring v. New York,* 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975), held that the right to counsel entailed the right of counsel to make a closing summation:

"There can be no doubt that closing argument for the defense is a basic element of the adversary fact-finding process in a criminal trial. Accordingly, it has universally been held that counsel for the defense has a right to make a closing summation to the jury, no matter how strong the case for the prosecution may appear to the presiding judge. The issue has been considered less often in the context of a so-called bench trial. But the overwhelming weight of authority, in both federal and state courts, holds that a total denial of the opportunity for final argument in a nonjury criminal trial is a denial of the basic right of the accused to make his defense." (422 U.S. 858–859, 95 S.Ct. 2553, footnotes omitted)

In the instant case, the judge asked the appellant if she had any statement to make, but he would not allow her to call any witnesses:

"THE COURT: At this time, the only thing I'm going to permit is her answer to that question that I have just propounded to her, if she has anything to say or have any reason to show this Court at this time why she should not be punished for direct contempt.

"MR. OYLER: Will Your Honor rule on our demurrers first?

"THE COURT: It will be overruled and exceptions allowed.

"MR. OYLER: Thank you, sir.

"Your Honor, on my instructions, she will have a formal statement in regard to the plea to this charge that Your Honor has

read and we will have testimony to present in regard to this matter.

"THE COURT: Well, Mr. Oyler, I'm not going to accept any other testimony. If she has anything to say to the Court on her behalf—but I'm not going to permit any witnesses to be sworn or to testify in connection with this case."

Thereafter, the appellant's counsel called a number of persons to the stand. Each time the judge refused to permit the person to testify, and the counsel made an offer of proof as to each person's testimony. Then, after calling all of his witnesses, the attorney asked to present closing argument. That, too, was refused.

In *State ex rel. Young v. Woodson*, Okl., 522 F.2d 1035 (1974), the Oklahoma Supreme Court vacated a contempt citation because the contemner was not given an opportunity to be heard. Justice Robert Simms stated:

"Nothing herein *contained is to be construed as infringing* [emphasis original] upon the power of an Oklahoma trial judge to properly maintain order and decorum during the course of any proceeding. Nor should this opinion be construed as infringing upon the right of a trial judge to enter a finding of contempt. *We simply hold, that under the prohibitions of the Oklahoma Constitution, a trial judge may not 'summarily' impose a sentence for contempt, direct or indirect, without giving the alleged contemner an opportunity to be heard." (Emphasis added)*

Although the judge in the instant case held a "hearing," the appellant was not permitted to present any witnesses or argument. We believe the procedure followed by the judge did not give the appellant a full and fair opportunity to be heard, and for that reason a new hearing must be held.

## II

■ With regard to the new hearing, we must consider another assignment of error raised by the appellant. She also contends that the judge should have disqualified himself from hearing the contempt case be-

cause of his personal involvement in the circumstances which gave rise to the appellant's disobedience of his order. The appellant was first approached about representing Sylvester Hutchinson on the evening before his preliminary hearing. She went to the magistrate's chambers before the hearing and, explaining the circumstances, asked whether the magistrate would grant a continuance. She told him that if the continuance was refused, she would not enter an appearance, but would tell Mr. Hutchinson to go to the hearing with his former attorney, who was prepared. At that time the appellant believed that the magistrate had agreed to grant the continuance. The magistrate later made the following statement concerning the discussion:

" . . . What you say is correct that you did talk to me this morning relative to a continuance, and I indicated to you that I would probably be or that I would likely grant a continuance . . .."

At Mr. Hutchinson's preliminary hearing on April 15, 1977, the magistrate refused to grant the continuance. He then summarily adjudged the appellant to be in contempt when she refused to participate in the preliminary hearing. The magistrate imposed a fine of $250.00 and ordered that the appellant be jailed until she paid the fine. The appellant immediately sought a writ of habeas corpus in the District Court on the ground that she had been denied due process of law. The District Court, the Honorable Joe Cannon presiding, ordered the appellant's release. The magistrate then set a contempt hearing for the following Monday.

Sometime during the weekend, the magistrate gave a newspaper interview concerning the matter. The resulting newspaper article, which was attached to the appellant's Motion to Transfer Matter to Another Judge, reported that the magistrate had said that the appellant deserved the contempt citation and that, "If I still feel as I did today, I can still impose whatever penalty that I think is warranted."

In *Smith v. State ex rel. Raburn,* Okl.Cr., 536 P.2d 976 (1975), we quoted standards pertaining to 'the contempt power, which the Oklahoma Supreme Court had adopted for the State of Oklahoma in *State ex rel. Young v. Woodson,* supra. Standard five states as follows:

"The judge before whom courtroom misconduct occurs may impose appropriate sanctions, including punishment for contempt, but should refer the matter to another judge, if his conduct was so integrated with the contempt that he contributed to it or was otherwise involved, or his objectivity can reasonably be questioned."

In addition, the appellant cites the Code of Judicial Conduct, 5 O.S.Supp.1977, ch. 1, App. 4, which was adopted for the State of Oklahoma by the Oklahoma Supreme Court on June 15, 1974. Regarding disqualification of a judge, Canon Three, ¶ C, provides:

"(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

"(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;"

Based on the facts of the instant case, we believe it is clear that the contempt proceedings should have been held before a different judge. The proceedings in the magistrate's chambers, which were not reported, were material to the contempt proceeding. Furthermore, due to the nature of the issues raised outside the record and the statements made by the judge to the newspaper reporter, we find that the judge's conduct was in fact integrated with the contempt. For that reason, and in keeping with Standard Five and Canon Three, supra, the contempt proceedings should have been heard by a different judge. The judgment of the District Court is therefore *REVERSED* and *REMANDED* for further proceedings consistent with this opinion.

BUSSEY, P. J., not participating.

BRETT, J., concurs.