v.

**STATE of Oklahoma, Appellee.**

No. M–95–934.

Court of Criminal Appeals of Oklahoma.

Oct. 31, 1996.

Patti J. Palmer, Stephen A. Lamirand, Palmer & Lamirand, Pawhuska, for Appellant at trial.

Patti J. Palmer, Palmer & Lamirand, Pawhuska, for Appellant on appeal.

Leisa S. Weintraub, Rene Henry, Jr., Assistant District Attorneys, Pawhuska, for the State at trial.

Robert Whittaker, Assistant Attorney General, Oklahoma City, for Appellee on appeal.

### OPINION

STRUBHAR, Judge:

Appellant, D.M., a 16 year old juvenile, was held in direct contempt of the Osage County District Court. He appeals from a Judgment and Sentence which, as punishment for his contemptuous conduct, ordered him placed in the custody of the Sheriff of Osage County in the Osage County Jail.

The conduct which precipitated Appellant's contempt conviction occurred on August 10, 1994, during arraignment of Appellant upon a juvenile petition. Appellant was being questioned by Special Judge B. David Gambill as to whether the juvenile petition correctly listed Appellant's name, date of birth, and address. During the questioning, Appellant's answers were unclear, so Judge Gambill asked Appellant to respond by the use of "yes, sir or no, sir." Appellant responded that he only had trouble talking in court. Judge Gambill then asked Appellant's mother, who was present in the courtroom, if Appellant had mental problems. At this point Appellant wadded up his copy of the juvenile petition, said "fuck you all," threw the petition at a case worker, and left the courtroom slamming the door. Judge Gambill immediately dispatched a deputy to retrieve Appellant and adjourned the hearing.

Although no court reporter was present during this arraignment, the parties essentially agree that the above is in fact what transpired. A short time later and in the presence of a court reporter, the court reconvened and Judge Gambill recounted for the record what had just transpired. He then asked Appellant, "Do you have anything else to say before I fix your punishment for direct contempt of court?" Appellant responded, "Do what you want." Judge Gambill then found Appellant guilty of direct contempt of court and sentenced him to ten days to serve in the Osage County Jail.

Not yet appointed for Appellant, but present in the courtroom during the initial arraignment when Appellant's outburst occurred and also in the courtroom during the reconvened hearing and sentencing, was Appellant's current counsel, Patti Palmer. After pronouncing Judgment and Sentence, Judge Gambill advised Appellant of his right to appeal and appointed Ms. Palmer to represent him on the contempt and any appeal therefrom.[1]

---

1. Because 5 O.S.1991, Ch. 1, App. 3–A, *Rules of Professional Conduct*, Rule 3.7, generally prohibits attorneys from acting as an advocate in matters where the attorney "is likely to be a necessary witness," we feel it is important to note that should a judge find themselves in a situation

similar to that described herein, a special effort should be made to appoint counsel who was not a witness to the contemptuous act and who otherwise has no conflict in the representation of the accused. As it turned out, Appellant would not dispute the behavior attributed to him or that

Two days later, on August 12, 1994—Appellant's seventeenth birthday—Appellant's counsel's firm filed a Motion to Refer to Another Judge under the authority of Rule 20 of the Rules for the District Courts, 12 O.S.1991, Ch. 2, App. 1, and also filed a Petition for Writ of Habeas Corpus. Hearings on both of these pleadings were held that day.

Judge Gambill confessed the propriety of the Rule 20 transfer, so District Judge J.R. Pearman assumed authority over Appellant's contempt matter and conducted a full hearing as to what transpired and led to Appellant being held in the custody of the Osage County Jail. The Assistant District Attorney was allowed to participate. Judge Gambill was called as a witness by Judge Pearman and Ms. Palmer was called by Appellant through co-counsel and each testified as to the course of events occurring two days earlier. All were permitted to question any witness. Appellant made a statement apologizing to the Court and to Judge Gambill.

At the conclusion of the August 12, 1994, hearing, Judge Pearman found that Appellant should rightly be held in direct contempt and sentenced Appellant to the time he had served to that point (approximately forty-eight hours) and ordered Appellant's release from the Osage County jail. Judge Pearman set Appellant's appeal bond at $2,000.00 and released Appellant on his own recognizance. It is from his conviction for direct contempt of court and his sentencing to the Osage County Jail that Appellant appeals.[2]

## I.

▮▮▮▮ Initially we note that Appellant does not in this appeal dispute that his behavior at his arraignment was indeed contemptuous. Nor was its contemptuous nature disputed below. Nevertheless, Appellant raises three propositions of error. In his second proposition, Appellant contends that he was not provided an opportunity to be heard as required by state law. We begin by recognizing that a direct contempt of court action is neither criminal nor civil but is instead *sui generis* and therefore procedurally different from other actions. *Gilbert v. State*, 648 P.2d 1226, 1230-31 (Okl.Cr.1982). Article II, Section 25, of the Oklahoma Constitution empowers the Legislature to "pass laws defining contempts and regulating the proceedings and punishments in matters of contempt." However, the Legislature's grant of authority in this regard is limited by that section's last sentence: "In no case shall a penalty or punishment be imposed for contempt, until an opportunity to be heard is given."

With these precepts in mind we turn to the facts in Appellant's case to determine if the proceedings had in the Osage County District Court were sufficient to provide Appellant with the "opportunity to be heard" as required by Section 25. We find that the contempt hearing of August 10th by Judge Gambill was insufficient under these particular circumstances to comply with state law. Considerations in our decision in this regard include the fact that Appellant was a juvenile, was appearing for his first time in any

such behavior was contemptuous in nature. Accordingly, the exception created at Rule 3.7(a)(1) for "uncontested issue[s]" permitted appointed counsel's continued representation in Appellant's case. Of course, such a result could not as a matter of certainty have been known by the trial court at the time of its appointment of counsel, and in the face of such circumstances, the court should have looked outside the confines of the courtroom for representation of the juvenile.

**2.** When Appellant's contemptuous conduct occurred Appellant was before the Osage County District Court for arraignment upon a juvenile petition alleging that Appellant was a Child in Need of Supervision as defined by 10 O.S.Supp. 1994, § 1101. Accordingly, Appellant originally filed this appeal in the Supreme Court of Oklahoma, Case No. 84303. On February, 24, 1995, the Supreme Court regularly assigned the appeal to the Court of Appeals, Tulsa Division, and on April 18, 1995, in a memorandum opinion that Division found *sua sponte* that appellate jurisdiction was with the Oklahoma Court of Criminal Appeals and ordered the cause transferred. Neither of the parties to this action elected to file a petition for writ of certiorari with the Supreme Court of Oklahoma contesting the April 18, 1995 Order of the Court of Appeals; nor do they object to this Court deciding the appeal. The April 18, 1995, Court of Appeals Order has now become final. Consequently, we accept jurisdiction of this cause.

court, and was unrepresented by counsel both before and during Judge Gambill's contempt hearing. In this particular situation, Judge Gambill's sole question of "Do you have anything else to say before I fix your punishment for direct contempt of court?" addressed to the unrepresented juvenile before sentencing him for direct contempt of court was not a sufficient "opportunity" as contemplated by Section 25.

This does not, however, end our review of the validity of Appellant's contempt conviction, for Appellant's contempt hearing did not conclude on August 10. We find that any error occurring in regard to the August 10th hearing was subsequently corrected when Judge Pearman, at Appellant's request, succeeded Judge Gambill in the direct contempt proceeding and afforded Appellant a full hearing upon all the issues surrounding Appellant's contempt within approximately 48 hours of Appellant's contemptuous act.

 Trial judges must have the ability to maintain proper decorum within their courtrooms. *See Suter v. State,* 588 P.2d 578, 580 (Okl.Cr.1978). There can be no dispute that in order to preserve decorum that it was within Judge Gambill's authority to have the sheriff take Appellant into custody and hold Appellant until such time that Appellant could be called before the court to explain his behavior. The Court has previously reviewed direct contempt situations where the trial court has had the Sheriff hold an offender in temporary custody in order to deal with contemptuous behavior at a later time. *E.g. Ingram v. State,* 650 P.2d 888 (Okl.Cr.1982); *Gilbert v. State,* 648 P.2d 1226 (Okl.Cr.1982). The court is not required to stop its proceedings to immediately hold the direct contempt hearing. How long a court may detain an individual prior to conducting the contempt hearing will depend upon the circumstances of each individual case. In Appellant's matter, we find that detention for 48 hours prior to granting Appellant a reasonable opportunity to be heard was excessive and improper. However, we find that the length of detention prior to Appellant's full hearing on August 12th does not bear on whether the August 12th hearing afforded an "opportunity to be heard" sufficient to comport with our state's constitution. We find that under all of the circumstances, Appellant was given such an opportunity. Accordingly, Appellant's direct contempt conviction was, and is, valid. Appellant's second proposition fails.

## II.

In his first proposition, Appellant contends that the August 10, 1994, Judgment and Sentence entered by Judge Gambill was insufficient to comply with the requirement of 21 O.S.1991, § 568, which states in full: "Whenever a person shall be imprisoned for contempt the substance of the offense shall be set forth in the order for his confinement, and made a matter of record in the court." Because we have found that it is the August 12, 1994, hearing which comports with all due process requirements and because we affirm Appellant's direct contempt conviction based upon the August 12 proceeding, the validity of the August 10, 1994 Judgment and Sentence is moot.

## III.

In his third proposition, Appellant argues that the District Court erred in sentencing Appellant to the custody of the Osage County sheriff to be held in the Osage County Jail. Appellant's assertion is well taken. In effect at the time of Appellant's direct contempt was 10 O.S.Supp.1994, § 1107.1, which specified the conditions under which a child could be detained prior to being adjudicated upon a juvenile petition. Subsection (A)(2) of Section 1107.1 flatly prohibited confinement in any "jail, adult lockup, or adult detention facility" for any child who was alleged or adjudicated as deprived, a child in need of supervision, or appeared to be a child in need of mental health treatment. Section 1107.1 did carve out several very limited circumstances when a child alleged to be a delinquent could be held in an adult facility; however, in none of those circumstances was the detention for the purposes of punishment, treatment, or disposition. Instead, each special instance was only temporary until an adjudication was obtained or until the child could be moved to a proper facility within a specified time frame. Likewise, in 10

O.S.Supp.1994, § 1116 (the statute which controlled what disposition orders a court could make upon a child's adjudication under the Juvenile Code) no provision is made for confining children in any jail or adult detention facility.

■ It is clear from the legislative scheme of our State's then existing Juvenile Code that no child was to be punished by placement in jail or other adult detention facility. The 1995 amendments to the cited sections now found in the recently enacted "Oklahoma Children's Code" and the "Oklahoma Juvenile Code" maintain this position. *See* 10 O.S.Supp.1995, §§ 7003–2.1(D), 7003–5.5, & 7304–1.1. Among the new statutes created by the 1995 amendments is an indirect contempt of court provision that allows placement of a juvenile "in a juvenile detention center" for up to thirty days for a violation of a court order issued under the "Oklahoma Juvenile Code." 10 O.S.Supp.1995, § 7303–7.4. Although "direct contempt" is not mentioned in this statute, we feel that the legislative intent remains clear: except in those special instances specifically enumerated, children are not to be confined in jails or with adult prisoners or in other adult detention facilities. Recently, pursuant to legislative mandate under the Juvenile Code, the Supreme Court has approved the *Detention and Disposition Guidelines for Juvenile Court Judges,* 67 O.B.J. 2228 (1996) (approved by Okl. S.Ct. June 27, 1996). Likewise, these Guidelines do not sanction a juvenile's placement in jail for contempt. We hold that should a district court find it necessary to confine a juvenile as part of any sentence for direct contempt of court, then in that event, the district court is limited to confinement of the juvenile in a juvenile detention facility.

Turning to the case at hand and in light of the foregoing, we find that the District Court's orders sentencing Appellant to placement in the custody of the Osage County

Sheriff for confinement in the Osage County Jail for direct contempt of court, was error. As Judge Pearman in his August 12, 1994 order entered a final sentence directing Appellant's release from confinement for time served in full discharge of his direct contempt sentence, there is nothing left for Appellant to do in order to satisfy that portion of his judgment and sentence which we hold proper. Therefore, we affirm all aspects of Appellant's final Judgment and Sentence except for the place of confinement, and as Appellant has fully served his direct contempt conviction, there is no need to remand this cause for any further proceedings. Accordingly the Judgment and Sentence is **AFFIRMED AS MODIFIED** and Appellant's appeal **DISMISSED,** and Appellant's **APPEAL BOND EXONERATED.**

JOHNSON, P.J., CHAPEL, V.P.J., and LUMPKIN, J., concur.

LANE, J., dissents and files opinion.

LANE, Judge, dissenting:

I do not disagree with the logic, reasoning or conclusions of the majority in this matter. However, my conscience dictates that I dissent, because I think it could be said we are acting outside of our jurisdiction.

This appeal was first asserted in the Supreme Court of Oklahoma. That Court assigned it to what is now called the Court of Civil Appeals, whereupon they held that this was a matter for our Court.[1] I would assert that could be error. The Oklahoma Constitution gives the authority to resolve conflicts in jurisdiction between this Court and the remainder of the Oklahoma appellate system to the Supreme Court.[2]

It can be asserted that a determination has already been made in matters of this kind when the Supreme Court promulgated rules pertaining to appeals in juvenile cases and matters of contempt. Rule 1.10(e) states, in relevant part:

Court has so held as to their own jurisdiction. See, *Stites v. Duit Const. Co., Inc.,* 903 P.2d 293 (Okla.1995).

---

**1.** I acknowledge the majority is correct when it states in footnote 2 of the opinion that the transfer decision of the Court of Civil Appeals was not questioned by the parties and they did not object to the jurisdiction of this Court. However, I believe that it is our duty to inquire into our jurisdiction *sua sponte.* The Oklahoma Supreme

**2.** Okla. Const. art, VII, § 4.

(2) An appeal or habeas corpus proceeding to review a trial court's decision in a proceeding for adjudication of juvenile delinquency or for certification of a juvenile to be prosecuted as an adult shall be brought in the Court of Criminal Appeals. An appeal or habeas corpus proceeding to review a trial court's decision in any other juvenile proceeding shall be brought in the Supreme Court.[3]

In the instant case it was alleged that the appellant was a child in need of supervision. Therefore, this was not an appeal from a case involving delinquency or certification which would grant jurisdiction to this court.

The only other way that this Court could obtain jurisdiction is if it were permitted to hear an appeal of the contempt of court finding. Again we look to the rules authored by the Supreme Court:

(1) An appeal or habeas corpus proceeding to review a sentence imposed for contempt of court occurring in a civil action or proceeding shall be brought in the Supreme Court; an appeal or habeas corpus proceeding to review a sentence imposed for contempt of court occurring in a criminal prosecution or a grand jury proceeding shall be brought in the Court of Criminal Appeals.[4]

From the foregoing, I have determined that this is not a criminal prosecution or a grand jury proceeding. Therefore, it can be argued the appeal is outside our jurisdiction and should be determined by the Supreme Court.

I acknowledge that it is not my authority to determine this conflict issue. It is also my thought that it is not within the jurisdictional scope of the Court of Civil Appeals to make the determination either. Therefore, I would refer this matter to the Supreme Court with a request that they resolve the jurisdictional question.

---

**3.** *Rules of Appellate Procedure in Civil Cases,* 12 O.S.1991, Ch. 15, App. 2, Rule 1.10(e)(2).

**4.** *Rules of Appellate Procedure in Civil Cases,* 12 O.S.1991, Ch. 15, App. 2, Rule 1.10(e)(1).